UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELLEY ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1345** |
| **HILCORP ENERGY COMPANY ET AL** | **SECTION "L" (5)** |

### ORDER & REASONS

Before the Court is a motion by Defendant D&L Towing to be dismissed due to improper joinder and failure to state a claim. R. Doc. 60. Plaintiffs, a group of thirty individuals and entities with interests in oyster leases in Plaquemines Parish, oppose Defendant's motion. R. Doc. 86. The court has considered the law and the record, and rules as follows.

I.   BACKGROUND

This case arises out of alleged property damage to oyster leases between the latter part of December 2020 and early part of January 2021. R. Doc. 1-1 at 14. Plaintiffs, who all hold interests in oyster bed leases in the coastal waters of Plaquemines Parish, sued two vessel owners and dozens of other Defendants who are allegedly "responsible for permitting, managing, and overseeing . . . oil and gas operation exploration and production projects[,] including the installation, maintenance, and repair of numerous pipelines and platforms within Louisiana territorial waters." *Id.* at 12. Plaintiffs allege that the Defendants, during the pertinent time period, introduced "brine," "produced water," and other unspecified "toxic substances" "in or in the vicinity of the Plaintiffs' oyster leases." *Id.* These substances are all alleged to be products of underwater extraction of crude oil. *Id.* Plaintiffs allege that, as a result of the introduction of

1

these substances into waters in or around their oyster beds, their oyster leases have incurred "significant oyster mortality." *Id*.

On January 5, 2022, Plaintiffs filed a state court petition in the 25th Judicial District Court for the Parish of Plaquemines, seeking damages. *Id.* at 1. Hilcorp Energy Company ("Hilcorp") and Harvest Midstream Company ("Harvest") were served on April 22, 2022, and removed this matter to this Court on May 13, 2022. R. Doc. 1 at 1.

In their notice of removal, Defendants asserted both diversity jurisdiction and federal question jurisdiction. *Id.* at 2. Regarding the former, Defendants averred that the non-diverse, in-state defendant, D&L Towing ("D&L"), is improperly joined, and thus the Court has diversity jurisdiction. *Id.* at 17. As to the latter, Defendants asserted that the incidents described in the petition necessarily concern claims under the federal Oil Pollution Act ("OPA") 33 U.S.C. § 40 *et. seq.*, and thus the Court has federal question jurisdiction. *Id.* at 3-4.

Plaintiffs filed a motion for remand, which this Court denied without prejudice at oral argument on July 20, 2022. R. Doc. 31. At the same hearing, the Court consolidated this case with a limited liability matter, *In Re: Settoon Towing, LLC et al* (case number 2:22-cv-01483-EEF-MBN), for the purposes of jurisdictional discovery only. *Id.* In a subsequent status conference held on October 19, 2022, counsel for Defendants noted that several parties still had not been served by Plaintiffs. R. Doc. 39. The Court ordered that the Plaintiffs serve all unserved Defendants by November 3, 2022. *Id.*

On November 3, 2022, five sets of Defendants filed 12(b)(5) motions arguing that Plaintiffs' claims against them should be dismissed because Plaintiffs failed to serve them by the November 3, 2022 deadline set by the Court during the October 19, 2022 status conference. R. Doc. 42-1 at 3; R. Doc. 43-1 at 4; R. Doc. 44-1 at 2; R. Doc. 45-1 at 4; R. Doc. 54-1 at 4. This

2

Court denied those motions, because the Plaintiffs served Defendants by November 9, 2022, and because it found that Plaintiffs had established good cause for the delay. R. Doc. 94.

On March 8, 2023, Plaintiffs filed a motion to amend their complaint, which would have added more allegations regarding Hilcorp's activities in the area near the oyster leases. R. Doc. 108. Specifically, Plaintiffs sought to amend the petition to allege that salinity monitoring units had shown a number of spikes in salinity in the area between December 26, 2020 and January 8, 2021, with some spikes upwards of 36 parts per thousand—a large increase in the "normal salinity conditions in the Gulf of Mexico," which hover around 21 to 25 parts per thousand. R. Doc. 108-2 at 5-6. Further, Plaintiffs wanted to add an allegation that Hilcorp maintains pipelines in the area, operates saltwater disposal wells in the area in which it reinjects produced water/brine into ground, and has used vessels to move produced water by barge and tanks to saltwater disposal tanks in the area near the oyster leases. *Id.* at 6. On March 28, 2023, the Magistrate Judge denied that motion, holding that the amended petition would be "futile, as it fails to allege any facts that would be sufficient to support a valid claim for relief." R. Doc. 118 at 2.

> For instance, the proposed amendment fails to plead that any pipeline actually leaked or discharged its contents, or that any boat allegedly carrying brine or produced water was involved in a collision or other event leading to a discharge. Rather, it relies on plain speculation that an alleged spike in salinity must have been caused by some act or omission of some defendant(s) without specifying anything more. The insufficiency of these allegations is actually reinforced by the last paragraph of the proposed amended complaint: "All of the allegations herein arise out of the exact same negligent conduct set forth in the original Petition/Complaint." (Rec. doc. 108-2 at 9). But there is no conduct, much less negligent conduct, alleged in the proposed Amended Complaint.

*Id.* Because the Magistrate Judge denied the Plaintiffs' motion to amend the Complaint, in ruling on the present motion the Court relies on the allegations of the original Complaint. Plaintiffs have appealed the Magistrate Judge's decision, and that motion is pending in this Court.

However, because the proposed amended complaint does not add any additional allegations against D&L Towing, the Court decides D&L's jurisdictional motion of improper joinder before ruling on Plaintiffs' appeal of the magistrate judge's order.

## II. PRESENT MOTION

D&L alleges that it has been improperly joined as a defendant to defeat diversity, and asks the Court to dismiss it on this basis and under Fed. R. Civ. P. 12(b)(6). D&L cites *Intl'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th. Cir. 2016) for the proposition that a defendant should be dismissed due to improper joinder if "[t]here is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." 818 F.3d at 207. To do so, the Fifth Circuit held, a court may conduct a "Rule 12(b)(6)-type analysis" or it may use its discretion to "pierce the pleadings and conduct a summary inquiry." R. Doc. 60-1 at 3 (citing *Intl'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th. Cir. 2016)). D&L notes that, since this Court denied Plaintiffs' Motion to Remand and allowed Plaintiffs to conduct jurisdictional discovery, Plaintiffs never requested any discovery from D&L. *Id.* at 2.

D&L argues that it operated one vessel, the M/V LORINA, between December 2020 and January 2021. R. Doc. 60-1 at 4. Based on a review of the vessel logs, it argues, the M/V LORINA was moored for 30 of the 62 days during that time period. *Id.* For 19 days, it was operating in Cameron Parish and Terrebonne Parish before returning to its home base in Larose, in Lafourche Parish. *Id.* For three days the M/V LORINA operated only in Lafourche Parish. On three days, it operated on the Intercoastal Waterway. *Id.* at 5. On December 20, 2020, D&L avers, the M/V LORINA was secured at Civeo Barge Facility in Plaquemines Parish, but it was not pushing any cargo, and then it traveled back to Larose on December 21, 2020.

4

Further, the M/V LORINA pushed empty barges to Jefferson Parish on December 27, 2020. But during this period, it "only entered Plaquemines while on the Intercoastal waterway," a far distance from Plaintiffs' oyster beds. *Id.* Further, the vessel logs show that the only job the M/V LORINA worked for Hilcorp, or was pushing tank barges, was from January 25, 2021 to February 3, 2021 off Cocodrie, Louisiana in Terrebonne Parish. *Id.* The owner of D&L and the two captains of the vessel have each provided a declaration that the M/V LORINA "did not push barges containing brine water or produced water in Plaquemines Parish from December 1, 2020 to January 31, 2021." *Id.*

Moreover, D&L supplies AIS data from the same period, which shows the same route as is described in the vessel logs and by the captains. D&L argues that this data shows that the M/V LORINA "did not go near" Plaintiffs' oyster leases. *Id.* at 6. Finally, Defendant D&L argues that the only time the M/V LORINA pushed tank barges was from January 25 to February 3, when the vessel was more than 40 nautical miles west of Plaquemines Parish. *Id.*

D&L argues that the vessel logs, declaration of D&L's owner and the two captains, and the AIS data are sufficient evidence for the Court to "pierce the pleadings and conduct a summary inquiry," D&L argues. *Id.*

In opposition, Plaintiffs argue that D&L's motion is "nothing other than an improperly characterized attempt at a Motion for Summary Judgment." R. Doc. 86 at 2. Plaintiffs cite the affidavit of Truman Alexis that it submitted to the Court previously, which Plaintiffs argue "presents a listing of contested issues of fact which would normally render the granting of a Motion for Summary Judgment impossible." *Id.* at 3. These contested issues of fact should mean the present motion "meets the same fate," Plaintiffs argue. *Id.* Finally, Plaintiffs contend that conducting a summary inquiry under Rule 56 would be inappropriate at this stage because to do

so would contravene the Rule's requirement that there has been "adequate time for discovery." *Id.* (quoting Fed. R. Civ. P. 56). Plaintiffs request that they "be allowed to proceed with the necessary jurisdictional and substantive discovery associated with D&L, including a corporate deposition of D&L." *Id.* at 4.

### III. LAW AND ANALYSIS

The federal removal statute provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. As a result, it is appropriate to consider first whether this court has jurisdiction, before it turns to evaluating the 12(b)(6) motions in this case. In this instance, because the subject matter jurisdiction question turns on whether D&L Towing was properly joined, the Court should first address that question. As the Fifth Circuit has held:

> When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004). Furthermore, the Fifth Circuit has held that "as long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). The Court will now turn to its analysis of D&L's improper joinder argument.

### A. Improper Joinder

The Court is mindful that the burden of persuasion on those claiming improper joinder is a "heavy one." *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). The court views "all unchallenged factual allegations, including those alleged in the complaint, in the light most

favorable to the plaintiff and resolve[s] any contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

The Fifth Circuit's leading decision on improper joinder is *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). *Smallwood* instructs that district courts may use one of two tests to determine whether a plaintiff has a reasonable basis for recovery under state law. *Id.* Under the first test, the Court conducts a "Rule 12(b)(6)-type analysis" to determine whether the complaint states a plausible claim against the in-state defendant.[1] *Id.* Alternatively, when a plaintiff has indeed stated a claim but may have "misstated or omitted discrete facts that would determine the propriety of joinder" the Court may "pierce the pleadings and conduct a summary inquiry." *Id.*

In this instance, the Court finds it unnecessary to conduct the 12(b)(6)-type analysis at this juncture. Even if this Court found that Plaintiffs stated a claim against D&L under state law, their claims against this Defendant cannot survive the second *Smallwood* test. If it appears possible that the Plaintiff may have "misstated or omitted discrete facts that would determine the propriety of joinder," the district court may apply the second test. *Smallwood*, 385 F.3d at 573. In doing so, the Court "pierce[s] the pleadings" and conducts a "summary inquiry" that includes consideration of summary-judgment-type evidence. *Id.* During this inquiry, the Court "identif[ies] the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74.

---

[1] *Smallwood* was decided in 2004, several years before the Supreme Court held, in *Twombly/Iqubal* that the federal pleading standard requires pleadings that state a "plausible" claim for relief. The Fifth Circuit has since clarified that the Rule 12(b)(6) plausibility standard in also employed in a Rule 12(b)(6)-type analysis assessing improper joinder. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 206 (5th Cir. 2016).

7

Even "a meritless claim against an in-state defendant is not the equivalent of improper joinder." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007). Thus, "the focus of this inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. To prevent courts from wading into such a premature analysis of the merits, the Fifth Circuit has cautioned that a summary inquiry should be strictly limited to those allegations in the complaint that "easily can be disproved if not true." *Id.* at 574 n.12. In *Smallwood*, the court offered examples of scenarios that would fit this description: "the in-state doctor defendant did not treat the plaintiff patient, [or] the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, [or] a party's residence was not as alleged." *Id.* Thus, the *Smallwood* court contemplated that a summary inquiry, as distinct from an analysis of the merits, would entail a "simple and quick" analysis of facts foundational to a plaintiff's claims against a non-diverse party. *Id.* at 574.

For instance, in *Guillory v. PPG Industries, Inc.*, plaintiffs alleged that certain plant employees were liable for a safety failure that resulted in an explosion at a chemical plant. 434 F.3d 303 (5th Cir. 2005). The Fifth Circuit found that joinder was improper after defendants produced uncontroverted evidence that the non-diverse defendants "had no connection to the particular DH Still from which the chemical explosion occurred" and had no "safety responsibility" as regarded the allegedly malfunctioning equipment. *Id.* at 310 n.22, 312.

D&L provides several pieces of evidence to support its claim that it "had no connection" to the activity alleged by Plaintiffs:

1. First, vessel logs show that D&L operated only one vessel, the M/V LORINA, and that this vessel entered Plaquemines Parish only two times between December 2020 and January 2021. During this time it was never engaged in activity related to brine or

    produced water. On December 20, 2020, D&L avers, the M/V LORINA was secured at Civeo Barge Facility in Plaquemines Parish, but it was not pushing any cargo, and then it traveled back to Larose on December 21, 2020. On December 27, 2020, while pushing empty barges to Jefferson Parish, it "only entered Plaquemines while on the Intercoastal waterway," which is distant from the oyster beds belonging to Plaintiffs. *Id.* Further, the vessel logs show that the only job the M/V LORINA worked for Hilcorp, or was pushing tank barges, was from January 25, 2021 to February 3, 2021 off Cocodrie, Louisiana in Terrebonne Parish. *Id.*

2. The owner of D&L and the two captains of the vessel have each provided a declaration that the M/V LORINA "did not push barges containing brine water or produced water in Plaquemines Parish from December 1, 2020 to January 31, 2021." *Id.*

3. D&L has provided AIS data from the same period, which shows that the M/V LORINA "did not go near" Plaintiffs' oyster leases. *Id.* at 6. D&L's data and vessel logs, taken together, show that the only time the M/V LORINA pushed tank barges was from January 25 to February 3, when the vessel was more than 40 nautical miles west of Plaquemines Parish. *Id.*

In opposition, Plaintiffs cite only the affidavit of Truman Alexis that it submitted to the Court previously, which Plaintiffs argue "presents a listing of contested issues of fact which would normally render the granting of a Motion for Summary Judgment impossible." R. Doc. 86 at 3. However, during the nearly nine months that Plaintiffs have had to conduct jurisdictional discovery, they have adduced no other facts supporting their claim that the M/V LORINA was pushing tank barges or even entered the area during the time of the alleged brine release; during the April 12, 2023 oral argument on this motion, Plaintiffs' own counsel noted that AIS data

showed only two vessels in the area during the time of the alleged incident. *Neither* belonged to D&L Towing.

Given the evidence produced during the jurisdictional discovery period granted by this Court during the July 25, 2022 hearing, this Court concludes that there is "no reasonable basis for predicting that state law would allow recovery against" the in-state defendant D&L Towing. *Smallwood*, 385 F.3d at 571. As a result, D&L has been improperly joined, and it is appropriate to dismiss it from this action.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss by D&L Towing, at R. Doc. 60. This Court retains jurisdiction over the suit and the 12(b)(6) motions of other Defendants, as this suit was properly removed to federal court.

New Orleans, Louisiana this 3rd day of May, 2023.

_____
**THE HONORABLE ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**